Thank you, Your Honor. There are several appeals that are being determined today, that are being argued today, and the first appeal is Cheap Easy's appeal, which is based upon the granting of Motion for Summary Judgment as defendants on the issue of whether or not they are fiduciaries pursuant to 29 U.S.C. 1002-21a. It's a de novo review on that issue, and we opine and argue that the summary judgment by the District Court was an error, that if you look at all the facts in this matter, as well as the very broad language of the statute creating functional fiduciary liability, that the decision should have been to deny the motion for summary judgment. I'm going to go back to the Pappas case, which cites the statements by the committee chairman for the House who vetted this particular statute. And what he said was that the committee has the view that the definition of fiduciary liability is necessary. Why should I give this committee chairman any authority at all? I've got a law in front of me. I can read it. I don't need him to tell me what it says. Well, very good, but it seems it would be of interest to the court, and perhaps you're disagreeing. It sounds like you are. Well, I'm not necessarily disagreeing, and I cite Pappas for the idea that influence without more is not enough. I don't cite Pappas for coming up with some committee chairman's idea to give a good time. Okay. Well, very well. I mean, influence is not enough is not, I don't think, what the law is given the circumstances in this case. Well, that's exactly what Pappas says. Well, that's not what other cases who have applied or who have interpreted USC 100221A have said. Well, Pappas is, first of all, a Seventh Circuit case, which is not controlling on me. It's just helpful for me to understand what the deal was. But when I read Pappas, I said influence without more is not enough. So I said I got to have some more. And so I'm looking for the language. Where's the language that I should say that the district court is wrong based on the language of the statute and applying it to the facts which are in front of me on summary judgment? Well, the language of the statute is any discretionary control. It's very broad. It's any discretion utilized at all. But it's control. It's not influence. Right. Influence that deprives or as a result of the relationship. But you've got to have control over what happens. And that's what I thought the district court said, can't find any control. Well, it can be effective control. It can be an effective control. It doesn't have to be direct control. It doesn't have to be check-writing control. Pursuant to Slagle, pursuant to Summers, pursuant to Rodriguez, it can be indirect control. It can be that the nature of the relationship between the parties is such that the decision-making authority has been ceded to the administrator or the actuary, and that's what happened in this particular case. My clients are mom and pops. They don't know anything about ERISA plans. They went to Hunting and said, look, we need somebody who's going to create this plan and who's going to run this plan for us. Hunting said, I'm your man. I'll do it. I'm your fiduciary. I'm your plan administrator. And that's what they relied upon. I don't think he said, I'm your fiduciary. I don't find that anyplace. He said that pursuant to the declaration of my client. In fact, they said just the opposite. And on summary judgment, that declaration must be accepted as true. And that wasn't a basis for the court's decision. I think it should have been. I think he should have looked at the nature of the relationship between these parties, the administrators signing letters, plan administrator, the administrator saying in ER 57 and also cited in ER 6, the court's order, that, what does he say specifically? He says. Counsel, don't we look at what the parties do, not what they say? Yes. We have to look at, the answer is yes and no. We have to look at both what they say and what they do. Because the nature of what they say creates the reliance by my clients on what the fiduciary or what the administrator is doing. But does it matter if they relied on them, if they did not actually function as fiduciaries? It does. Because once they say, I'm the fiduciary, I'm the plan administrator, and my client is relying upon them to run the plans,  But as a matter of law, what case supports your argument that if someone represents him or herself to be a fiduciary, they are, as a matter of law, to be deemed a fiduciary? What case says that? Well, I think that's, it's part of the analysis that the court needed to do relative to the nature of the relationship. I'm asking you for a case citation that has incorporated that, the analysis that you are proposing to us, that what an individual calls him or herself dictates whether or not they're actually functioning as a fiduciary. No, I think that it is part and parcel of the analysis of the relationship of the parties and whether or not my clients have ceded control of the management and administration of the plans to the administrators in this case. I'm asking you, is there a case that articulates that analysis? There is a case that articulates the analysis generally. You're correct, Your Honor, not specifically. There's not a case out there that says, if I say I'm the administrator or the plan fiduciary, then I am the administrator. But what we say is that that is part of the relationship that has to be analyzed, part of the relationship that the Rodriguez court analyzed. And again, Rodriguez didn't involve a specific assertion by the administrator that he was the plan fiduciary administrator. But didn't the district court in this case take all of that into consideration? I believe, based on a de novo review, this is an abuse of discretion, based on a de novo review, I don't believe that they gave the proper weight to the nature of the relationship of the parties in this case in determining whether or not under the de novo review, there was a reasonable amount of discretionary authority to the administrators. That was part of the reason that the district court said that attorneys fees weren't warranted because there was a reasonable basis for making the argument that the, that there, they were administrators or fiduciaries, but that argument didn't carry the day. So the district court actually considered this argument that you're making and tell us why on de novo review, we should say that's incorrect. Yes. Under de novo review, again, looking at the most analogous case, which granted is not a nice circuit case, but looking at the most analogous case to this matter, which is the Rodriguez case. The Rodriguez case involved like this case, a long-term relationship between an administrator and a company. And based on that long-term relationship, the Rodriguez court said we cannot grant motion for summary judgment as to the cause of action for breach of fiduciary duty under ERISA, because it is possible that a jury could find that the authority to, to administer and manage these plans was seated to this administrator on this particular issue. And that's what we're arguing in this case. It's interesting that IT Corp versus general American life insurance says the test for determining about the fiduciary is not, does not turn on the contract, but turns on the fact of what the party does. So it doesn't seem to me that then what the party says or what the party doesn't say is not the thing. It's what the party does. So then if I look at what a party can do without being a fiduciary, even if I look at the department of labor guidance on what you can do or not do and not be a fiduciary, and I read all of those, I'm trying to figure out what is there alleged here, which they did that's outside of even those guidelines. And therefore why is the district court wrong? That's my problem. Yeah. So, so my counter to that, your honor, my argument, there is no counter. I'm asking you to help me. I'm not trying to be counter here. I'm trying to say, okay, I can't look at the contract because I look at the contract. You're out. It says they're not fiduciaries period. We do not and will not be. So you're, you can't win on the contract, but you got IT helping you. So I look at what they do and then I go through and I look what you allege. And then I look what even the department of labor says you couldn't do. It can't do as a fiduciary. And I go through 11 of those things. And I can't think anything that you've alleged that they've done, which says they're then the fiduciary. Yes, your honor. So I think there are four things that they have done. There's three, if you're talking actions as opposed to words, because we'll remove the plan administrator from the letters issue or evidence. So the three things are, are one, they dictated the amount of the contributions ER 57. I, I cannot allow you to contribute anything more than $50,000. That's not a recommendation that that's a person who's assumed control of the management administration, the plan and is telling my clients what they have to do. That's not quite accurate because he was telling them in context that there would be penalties, financial penalties if they didn't follow essentially his advice. When he, when he framed it in terms of, I cannot allow that, that becomes a dictate as opposed to recommendation. He could have done the same thing and not said the very affirmative language, you know, I cannot allow you to contribute more than this. I recommend instead of, I cannot allow you. Well, I don't actually, I don't necessarily think that's true, but they, they might be on a better stead if they explain things to the client, because that brings me then to the November 4th, a 2014 letter which is really the crux of this case. The, the the dictate, which was framed as a recommendation that they terminate the plans. And that, that's what created the damages in this case because that's where the excise taxes come from. So the damages, how much was it? How much did the damages come through? It's, it's $1.8 million, 50% of $1.8 million is 900,000 plus lost opportunity costs and other damages that we're asserting. But, but what I'm saying is sometimes in, in, in answering, and what would have been, what would have been the consequence? Are they not terminated? If they had not terminated the plans, they could have amended the plans to raise the payout and they could have not contributed to the plans. And that would have, that would essentially sucked up the over fund. So they wouldn't be subject to the excise tax penalties. But now, unfortunately, once they terminated the plans, and I think everybody agrees with this in the case, now they terminated the plans. I mean, there's, there's going to be an excise tax when the, when the plans are closed, there's, there's no way to avoid it. You've now fixed at least the amount of over fund that was in the plans at the time. And the over fund is actually grown, even though they're not contributing to the plan, which we also contend is additional damages. But, but in terms of again, going back to what they did or what they didn't do, you know, they, they dictated the amount of the contributions there, their recommendation to terminate the plans wasn't really a recommendation. It was a dictate based on the relationship between these parties, a long term relationship. You may want to give us a little bit on the other issue because you're out of time on the attorney's fees issue. Oh, so on the attorney's fees issue, uh, as, you've only got a minute and 22 left. That's why I was, it's an abusive discretion. I'm sorry, your honor. I'm not used to these arguments. It's an abusive discretion standard. Um, the court did not abuse its discretion. The main consideration that the case law says that you look at is whether or not it's a colorable claim. Um, the district court judge found that it was a color of a claim. There's case law out there supporting that was a colorable claim. There's facts supporting that was a colorable claim. Um, the statute itself again is very, very broad. Um, that's not always the way it's been interpreted, but I believe it should be interpreted much more broadly than some courts have interpreted the past for all those reasons. Uh, it's a colorable claim, which, which essentially, uh, was what was utilized for factors one, three, and five, um, factor four doesn't apply. Uh, and factor two is a neutral. Um, they have insurance. Uh, they weren't able to prove that we have the, we have the fees to pay an attorney's fees award. Bottom line is you don't punish parties for bringing colorable claims, even if they ultimately are unsuccessful in the merits in a summary judgment. All right. Thank you, counsel. Thank you. I can't hear you. You've got to turn on for. Okay. Could you please start again, including introducing yourself turn off the mute. You're on mute. You're on mute. Okay. Can you hear us now? Yes. Yes. And can you hear me clearly? Yes. Okay, good. Um, uh, the, uh, deputy clerk had, the deputy clerk had instructed me to ask judge Rawlinson, um, because there's only one rebuttal in an appeal and this was consolidated. And yet there are three appeals, um, the plaintiff appellants appeal in five, five Oh five, five and both of the two defendants parties fee appeals. So in terms of our split of the time, uh, Mr. Schechter will be addressing the five, five Oh five, five jurisdiction issue. I will be addressing both of the defendant appellants, uh, respective appeals together, but we needed to know it before we, uh, tell the court what that split time is, whether or not we have the opportunity for a rebuttal of the fee appeals. You do have an opportunity for rebuttal, but the total time you have is 15 minutes. Okay. Correct. So, uh, we have, I don't see Mr. Schechter on. Yeah, we're using because, uh, we're in the same room. I will, he will be starting with the five, five Oh five, five jurisdiction case. I will be vacating this seat. And then we'll play musical chairs and then I'll come around to address the fee issue. So, uh, our split of time is going to be six minutes and six minutes each with a, uh, reservation of three minutes rebuttal only for the fee appeals. All right. Okay. So I will, uh, I think in all fairness, I have to give Mr. Horton an opportunity as well because it, because the, actually the fee appeal was your appeal. Correct. He would have, he would get an opportunity to address that after you give your primary argument on the fee. Uh, we were told that the total time covered everything. Um, including like we had to split 15 minutes so that we, in that 15 minutes we would address at, on behalf of the appellees. That's correct. Okay. Anyway, I will leave. So Mr. Schechter can start on his. All right. Okay. Good morning, your honors. And if it may please the court, I am Mark Schechter of Butterfield Schechter and we represent the appellees, Peter L hunting and company and the estate of Peter L hunting, uh, and both disappeal and the related. Um, appellants attempt to construct an Arisa case out of what is nothing more than a common law negligence claim. Why? It appears to have become sport for plaintiffs counsel to paint any claim relating to an Arisa plan as a fiduciary breach case because of the fee shifting provisions available under Arisa. And as a result, the case law has become rather well-developed regarding determining fiduciary status. A judge Hayes gave a well-reasoned opinion granting the defendant's motion for summary judgment, which should be affirmed by this court. The basis for plaintiff's appellant Arisa claim against appellees is that somehow appellees, uh, provided, uh, appellees who provided typical third party administrative services or what the department of labor alternatively calls ministerial services, uh, somehow became, uh, as a result, fiduciaries to the plans. Uh, and you, and you agree on, you agree, I guess, with ice, I T Corp versus general American life insurance. The test doesn't turn on the contract, but on the fact of what the party does. Yes, your honor. All right. So if it depends on what the party does, you've heard what counsel has suggested your clients did. Why did that not make them a fiduciary? Because your honor, they did not exercise any discretion or control regarding the operation of the plan or its assets, which is a requirement to, to, uh, for the dean. What about I instruct you to do this? How about, you better not do it any other way. I don't believe that that, uh, was what the information was in the room. What about, I will not allow. Yes. Okay. Your honor. So, uh, those are, are, those are directions that, that if you took that action, it would exceed permissible limits of the internal revenue code for plans funding, which as the plan consultant was advising him that as a result of doing that, you'd be in a penalty position. But that's easy to say. If you do this, you're in a penalty position. That's a lot different than saying, I will not allow you to do it. Yeah. Your honor. Actually, what he says is that, uh, I must limit you at this time to $50,000 because that was the maximum allowable deductible contribution at that time. But he also goes on to say in that same letter that once we have both your year end valuations completed, we have the 2010 segment rates. The IRS publishes, we will be able to give you a better picture. So at that point in time, he was telling them that as far as funding the plan, you should stop now because we don't know what the end of the year is going to look like. Uh, having overfunded the plan and resulted in penalties. Uh, that is, uh, in document ER 0 5 7. What about, what about his, your adversaries argument that you, your client decided that the plan should be terminated? Okay. Your honor. It seems to imply that they were actually making a serious decision. Yes, your honor. The record does not reflect that the, uh, the decision, the red, there was a recommendation to terminate the plan because the plan had reached full funding. But the only person who had the ability and authority to terminate the plan was the plaintiffs themselves. My clients did not have the authority or the ability, uh, under the law to terminate the plan. It gave a recommendation that the plan should be terminated because of it having reached full funding status. Well, it wasn't exactly, it wasn't exactly a recommendation when you go to them and said, you got to do this and here's what you got to sign to do it. And it's all prepared for you. Well, your honor, they, they could have easily refused to sign those items. They, uh, they ran the company. They were the name fiduciaries. They were the name plan administrators. They could have sought advice from a second party, uh, if they had questions about it, but from the perspective of the plan administrators and giving what they believe to be sound advice, uh, and recommendations regarding the plan, this was the action that was required under the circumstances. So they gave advice that under the department of labor, um, and the department of labor, uh, regulations defining the scope of an administrative services would be deemed typical plan administrative services. But on summary judgment, don't I have to give credence to what plaintiffs have said in the complaint, which is your, your people met with them. Your people told them the plans were overfunded. They needed to be terminated. They gave your client gave them the pre drafted corporate resolutions telling them to terminate and told them to sign. Don't I have to give credit to that? Well, your honor, you can give some credit to it, but it doesn't still, uh, put the onus on the consultants for giving advice that that is the appropriate course of action to take. Uh, it all it was was advice. Uh, the, uh, and as, as judge Hayes found that they, uh, plaintiffs in this case had the ability to disregard that information. They could have sought counsel for a second opinion, but there was nothing that was done by my clients that required a signature on that paper, uh, from the plaintiffs. They, all they did was give a, a recommendation that the plan was, uh, fully funded and, uh, it should be terminated. These are the documents that you would execute to go through that process, but it was up to the, uh, the fiduciary, the board of directors of the, in fact it was the board of directors of the company that took the action to terminate counsel. You can see that your time. Okay. Thank you. Thank you. Okay. So you're the appellant in this, in the, on this issue, because you appeared the, uh, denial of fees. Yeah, actually there are two sets of defendants. There's the five, five, six, five, three case, which are the two hunting defendant appellants. And then the five, five, six, five, four case, which are the three, uh, Sheffler related, uh, appellant defendant appellants, but it's all for the fees, correct? What's that? But you're challenging the denial of, uh, uh, the fact that you want to award fees. Correct. Correct. And, and certainly the briefs are comprehensive on all these issues. I do have two additional points that came out of a case just issued by the central district of California called Allmont ambulatory surgery center versus international long shore, uh, 2020 U S district Lexus, seven, seven, six, five, two central district, California, March 31, 2020. And in that case, you sent that to council. Uh, uh, no, actually I just prepared a, um, we didn't know we were going to use this. Um, I just, well, I wouldn't use it then. If you haven't given council a chance to look at it so he can respond, I wouldn't be using it in front of us. Okay. And I don't think it's authority anyway. No, court's not going to tell us what to do. Okay. Go ahead. Before you go further, would you please introduce yourself for the record? Uh, my apologies, uh, Susan Horner on behalf of both of the sets of defendants in the five, five, six, five, three, five, five, six, five, four, uh, on the fee appeals cases. Um, the ninth circuit has held that where a losing plaintiff proffers, no evidence demonstrating their current financial assets and showing their ability to comply with a fee award. The second Hummel factor favors the imposition of fees. So that factor is an, another issue that should have been weighed in the defendants favor. And that's the Riley before, before you get too carried away there, counsel, what is my standard or review on this issue? Uh, abuse of discretion. So what is it that I have to find the district court did in order to abuse its discretion? In incorrect application of the Hummel factors, uh, including combining the first bad faith factor without addressing the, uh, just a minute. What don't I have to find that what the cow, what the district court found there is totally irrational, illogical, or follow the law. Okay. So they did apply the Hummel factors, right? He did. And you just are disagreeing with how he applied them. Correct. It is that in that instance, how is it illogical? If he goes through them, he applies them, he applies them right down, takes both sides, tries to decide what to do. How could that be an abuse of discretion? The method of application was an incorrect application. He combined three. Well, first of all, just a minute, just a minute. First of all, you say as to the fourth factor, it's inapplicable, right? Correct. Everybody agrees with that. So the only factors we're really talking about are one, two, three, and five. Correct. And on one, I'm sorry, on one, the court considered only bad faith, not the alternative culpability or bad faith from factor one. And there are any number of examples of culpability, but on the bad faith, the court looked primarily to the subjective belief of the plaintiff's counsel and also did not look at the actual case law that was being relied on critically. And we briefed that in detail in the Scheffler opening brief and reply. So I probably don't need to repeat it here, but it needs to be based, a reasonable belief has to be based on enough documentary material to support a reasonable basis. And if you look at the documentary material, there was only one thing they looked at and that was a declaration of their expert that the district court did not accept that just parroted the plaintiff's jury and didn't consider, for instance, the record as a whole with all of the contrary evidence that shows documentary evidence that shows the opposite. And there was no... To be fair, I've been in enough jury trials to know that you can have a lot of evidence in the record that can be contrary, but if there is any substantial evidence to sustain what the jury did, then at that point you can't undo the jury. And to be fair, that's the same standard review for abuse of discretion. Was there any evidence here to sustain what the district court did as to the first element? Yes, there was. It was a very weak review. If you understand the Rodriguez case, and what that case did is primarily about a TPA. Well, but what the court said, but just a minute, what the district court said was that the plaintiff's position was that the defendants could be liable as the functional fiduciaries with effective controls. And that was a reasonable belief, even though applying the law wasn't right. And so that it was possible to prove that it was an ERISA case. Now looking at ERISA and looking what happened here and looking that you won under the ERISA law, it doesn't seem to me that it's totally an abuse of discretion to think that they could believe that what happened here would not have made you functional fiduciaries. The Rodriguez case never argued, never even mentioned the DOL regulations. The very actions that the court said created an issue of fact was, there was no case law cited. It was basically the 1002-21A. So the support for it, if you actually look at what happened in Rodriguez the TPA made an error in the DOL regulations.  plaintiff's position was correct. Well, I'll be fair. I'll be fair. I do not think Rodriguez stands for the law as it relates to an abuse of discretion on attorney's fees. I think that Rodriguez gives us a case where a district judge looking at these same factors goes through and weighs the factors and on his own discretion decides what to do. I don't think that Rodriguez says every judge who doesn't come out the same way as a Rodriguez judge has abused its discretion. What the court didn't do though, is that the first homofactor is culpability or bad faith. And the court did not look at the culpability factor. And there are numerous examples of the plaintiff's culpability, their refusal to acknowledge that they are the statutory plan administrator and plan fiduciaries as a matter of law. But the problem comes in that, and I guess I'm trying to figure out, you know, I go through and I apply these fiduciary responsibilities and I come, if I come out the same way as the district court did on that, I can see that the law is the law and therefore they lose. However, if you don't really, if you don't, if you're fighting about and you're left with this it corporate definition, the test doesn't turn on the contract, but in fact, on what the party does, it seems hard to ever understand that that is the discretion, what the district court found there. Why should it be? The court did not address any of the culpability factors. Okay. I understand your argument. All right. Now that you've exceeded your time on this portion of the argument, Mr. Horton didn't have some time remaining at, as he see equity on this issue, him and your rebuttal. You know what you're on, right? I think I'm just going to rest on the pleadings. I don't think I have anything for you to say. Thank you for that. All right. Rebuttal. Yes. And one of the additional points that I think that was three minutes for rebuttal. Yes, correct. The additional point that we argued is are the underlying purposes and counsel protections. Did you hear him say he just going to rely on the pleadings? I don't think we need another argument. What do you got contrary to what he said? This is on, on the fees. We said that the underlying policies and principles and protections of a statute, the intent of Congress in drafting the statute as said and the regulations that form the mandatory rules to apply it to effectuate that intent. Those should be considered for several reasons. It's just a matter of law. It serves very important public purposes and the case of the ninth circuit, it's, it's well settled that where there is a issue of purely a legal one, the injection of which would not have caused the parties to develop new or different facts. The court of appeals may consider it. The question here, the court has never, and to my knowledge, no court has ever addressed whether the underlying purposes and protections of one Oh two 21 a which are to protect a fiduciary switch or protect TPAs and other professional services providers who operate under rules and formulas and so forth created by other parties such as the IRS and so forth. That should be considered just like the special circumstances rule is considered for the plaintiffs who are, there's a an Arisa underlying purpose in its remedial form to protect those plaintiffs access to the courts. And in this case that both Congress and the DOL has decided underlying the statutory construction to protect TPAs and attorneys and accountants and those who provide professional services. If the court wishes, I do have a summary of the page sites that the court can refer to for those, the discussion of those purposes and protections. But we submit that the, this issue should be considered because it's strictly one of statutory construction. That statute is central to the case. It's important to the public. It hasn't been decided before. And it, it needs to be addressed. Would you like those, those page sites? I wouldn't, I don't want them. I think our law clerks have given us everything we need. Okay. Are you done counseling? You have 12 seconds. No, I think that's it. And I appreciate your time. Thank you. All right. Thank you to all counsel for your help. Arguments in this case, the case argued is submitted for decision by the court.
judges: Rawlinson, N.R. Smith, Korman